NUMSEN et al. v. LEVI et al.

No. 15,342; May 2, 1894.

36 Pac. 657.

**Sale Through Brokers—Repudiation by Purchaser.**—Where merchandise brokers present to purchasers a memorandum of the sale, or "bought note," which is accepted by them, the latter cannot repudiate the sale seven days after part of the goods are shipped, and two days after they receive invoices of such shipment, because the sellers did not give a certain guaranty required by the purchasers' contract with the brokers.

APPEAL from Superior Court, City and County of San Francisco; Eugene R. Garber, Judge.

Action by Numsen and others against Levi and others to recover the contract price of certain oysters sold and delivered by plaintiffs to defendants. From a judgment for plaintiffs, and from an order denying a motion for new trial, defendants appeal. Affirmed.

Wal. J. Tuska for appellants; Pierson & Mitchell for respondents.

PER CURIAM.—In November, 1891, Duval & Co., merchandise brokers at San Francisco, claiming to represent plaintiffs, who were doing business as oyster packers at Baltimore, Maryland, offered for sale to the appellants a lot of canned oysters at a shade off current rates. The offer was accepted upon condition that the packers should execute a written guaranty to appellants that the goods were as good in pack and quality as the goods of Farren & Co. or Fait & Weinbrenner, well-known oyster packers. A written order was given for four hundred and sixty cases of "selects" and six hundred and seventy cases of "standards"; the prices for both lots being fixed at $2,000. The oysters were to be delivered at Baltimore, in unlabeled cans—the purchasers being allowed the cost of labeling—as follows: "60 cases of selects, made up of 40 cases of 12 oz. and 20 of 6 oz. cans; and 90 cases of standards, made up of 25 cases of 10 oz., 20 of 5 oz., 25 of 8 oz., and 20

of 4 oz., cans''—to be delivered at the cars in Baltimore, and
sent to San Francisco by freight, the balance of the order by
sailing vessel. Duval & Co. did not communicate with the
packers, as they agreed to do, but took the written order given
them by the appellants, and, without the knowledge of the
latter, wired E. C. Shriner & Co., brokers at Baltimore, as fol-
lows: "Levi—selects, 340 12's, 126's; standards, 225 10's,
125's unlabeled; Numsen's labels, 124's 222 8's, $1.45. Getz—
200 selects, 12's unlabeled. Have sent shipping directions.
Selects must fully equal best sample. Standards must be as
good as the pool. Express us samples of both. Credit us
overcharge on all 8's. W. M. Duval & Co." Upon receipt
of this dispatch, Shriner filled the· order by purchasing from
the respondents three hundred and forty-five cases of stand-
ards—two hundred and twenty-five cases of the ten ounce, and
one hundred and twenty of the five ounce—at the prices
agreed upon by appellants and Duval & Co., and by purchas-
ing from other parties the balance of the order, and delivered
to the respondents a memorandum in writing (or "sold note,"
as it is called) for that portion of the order purchased from
them. The note reads as follows:

"Baltimore, Nov. 19, 1891.

"Bought of William Numsen & Sons, for account of H. Levi
& Co., San Francisco, Cal. (description of the goods), terms
60 days or cash, less one and a half per cent. Hold for ship-
ping directions.

"E. C. SHRINER & CO."

Thereupon Shriner wired to Duval & Co., to the effect that
the respondents confirmed the sale to Levi & Co., upon receipt
of which Duval & Co. made out a memorandum of sale, called
a "bought note," and delivered it to Levi & Co., who have
ever since kept it, and have never offered to return it. This
bought note is in two parts—the one covering the shipment by
rail, and the other by sailing vessel. Copies of this bought
note were mailed to Shriner & Co., and received by the former
on November 25th; and on the last-named day they wrote to
Duval & Co., confirming the sale, but no written guaranty was
ever furnished. Duval & Co. had no correspondence with
plaintiffs on the subject, and had no instructions from
them. On December 2d, in accordance with instructions from
Shriner & Co., the respondents delivered the rail shipment at

Baltimore, and forwarded to appellants the invoice by mail; and on December 10th delivered the balance of the goods, and forwarded the invoice by mail. In about a week after the sale the appellants complained to Duval & Co. that the respondents had failed to confirm the terms of the sale in that they had not given the guaranty required by the contract. On December 7th the appellants for the first time disclaimed the sale. At that time the market for standards had gone down. Upon receipt of the invoices the appellants wrote to Duval & Co. that, as they had not received a guaranty from the Baltimore packers as promised, they should decline to receive any goods they might pack for them under the memorandum. Upon receipt of this letter (December 8th) Duval & Co. at once wired Shriner that appellants were trying to repudiate the contract, but nothing of this was known to respondents until December 15th, when they received from the appellants a letter dated at San Francisco, December 9th, saying that they were surprised at the shipment, as they entered into negotiations only with Duval & Co., which were not consummated; that they had not even received any invoice; and that they declined to receive the shipment, and requested respondents to make some arrangement by mail relative to the same. Other correspondence followed, in which the appellants insisted there was not a sale, and refused to pay for the oysters, whereupon this action was brought by respondents to recover the sum of $1,074.62. Findings and decree were entered in favor of plaintiffs, according to the prayer of their complaint, and from this judgment, and an order denying their motion for a new trial, the appellants have appealed.

Upon the facts stated we think that the judgment was right, and should be affirmed. It is a well-established rule that the broker is the agent for both parties. When the bought note of November 19th was furnished by Duval & Co. and accepted by the appellants, the sale could not thereafter be set aside except by mutual agreement of the vendors and vendees. In procuring the confirmation of the sale by respondents, Duval & Co. acted as their agents, and in delivering the same to the appellants they acted as the agent of the latter within the well-established rule and the custom of brokers. We think the note was a sufficient memorandum of the sale within the provisions of subdivision 4, section 1624, Civil Code. The

mere fact that the name of the vendor did not appear in the bought note did not render the latter void, it being clear that Duval & Co. were acting as brokers for the vendor. The sold note delivered by Shriner & Co. to the respondents contains the names of both the vendor and vendee, and is sufficient, under the custom of the trade, if the names of the contracting parties appear upon either one of the notes. There is no contention, as we understand it, that the oysters were not as good as Farren & Co.'s or Fait & Weinbrenner's. The appellants, did not repudiate the sale until the invoices of the first shipment had reached them, five days after the shipment; and the letter of December 9th shows that they waited two days after the receipt of the invoices before they wrote to the respondents repudiating the sale. This was twenty days after they had received the memorandum from Duval & Co., reciting that the goods had been sold to H. Levi & Co., and which gave a description of the goods, and the terms of sale. Under these circumstances we think the respondents are now estopped from denying the validity of the sale. Judgment and order affirmed.